# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

SARAH McNEAL,

                Plaintiff,

-vs-                                                    Case No. 2:10-cv-764-FtM-29SPC

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.
_____

## REPORT AND RECOMMENDATION[1]

## TO THE UNITED STATES DISTRICT COURT

This matter comes before the Court on Plaintiff Sarah McNeal's Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's claim for disability insurance (Doc. #1) filed on December 17, 2010. The Plaintiff filed her Memorandum of Law in support of her position (Doc. #16) on May 25, 2011. The Commissioner filed the Memorandum of Law in support of the Commissioner's decision (Doc. #19) on August 24, 2011. Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff previously filed an application for supplemental security income on April 7, 2006, alleging disability beginning January 1, 2003. (Tr. 9). The Plaintiff amended her alleged disability onset date to March 1, 2004. (Tr. 9). The claim was denied initially on June 16, 2006, and

---
[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

1

upon reconsideration on January 8, 2007. (Tr. 105-08; 112-15). The Plaintiff subsequently filed a Request for Hearing before an ALJ. (Tr. 116). A hearing was held before ALJ Thurman Anderson on March 9, 2009. (Tr. 74-102). ALJ Anderson issued an unfavorable decision on April 23, 2009. (Tr. 6-16). Plaintiff requested review of the decision. (Tr. 191-92). On October 29, 2010, the Appeals Council denied review. (Tr. 1-5).

## *Plaintiff's History*

On the date of the ALJ's decision, Plaintiff was 55 years old. (Tr. 16, 77). Plaintiff has a tenth-grade education and past relevant work experience as a housekeeper. (Tr. 77, 131, 135). Plaintiff alleges an onset of disability from March 1, 2004. (Tr. 9). She alleges disability due to swelling in her knees and feet, rheumatoid arthritis in her right shoulder, carpal tunnel syndrome in her right hand, high blood pressure, and pain. (Tr. 130).

## *Hearing Testimony*

A hearing was held before and ALJ on March 9, 2009. The Plaintiff and her daughter testified. (Tr. 74-103). The Plaintiff testified that she does not drive on a regular basis because of her hands (Tr. 80), and that her knees and legs swell up. (Tr. 85). Plaintiff is right-handed. (Tr. 85). She testified that she feels pain in her right hand every day and sometimes drops things. (Tr. 85). She also testified that her daughter helps take care of her personal needs, such as her hair, and that she has problems reaching overhead and reaching out for things. (Tr. 86-87). Neither a medical nor vocational expert testified at the hearing. (Tr. 74-103).

## *Medical and Psychological History*

On March 1, 2004, Plaintiff went to Family Health Centers for a blood pressure check and for pain in her arms, legs, and chest. (Tr. 258). She returned again on December 22, 2004, for a tingling sensation in her right hand. She was prescribed medications. (Tr. 254). On April 22, 2005, Plaintiff followed up with Martin Pinto, M.D., complaining of pain and tingling in her right arm and shoulder. (Tr. 238). Dr. Martin found that Plaintiff's right wrist, arm, and shoulder were normal. (Tr. 239).

2

Plaintiff returned to Family Health Centers on November 30, 2005. (Tr. 231). Plaintiff was seen by Rachel Harris, M.D., for complaints of shoulder pain. Dr. Harris noted that Plaintiff rated her level of pain at 9 on a 1-10 scale, and that there was tenderness on palpitation of the shoulders. (Tr. 230). Dr. Harris prescribed potassium. (Tr. 231). On December 2, 2005, x-rays revealed degenerative changes with no acute osseous abnormalities. (Tr. 206). The doctor could not rule out an old fracture of the distal clavicle. (Tr. 206). When Plaintiff returned to Dr. Harris in January 2006, Dr. Harris noted that Plaintiff's chief complaint was a blood pressure check. (Tr. 225). Plaintiff reported that the pain in her right hand was again a 9 on a 1-10 scale. (Tr. 225). At Plaintiff's February and March appointments with Dr. Harris, Plaintiff complained of progressively worsening tingling, numbness, and burning in her right hand. (Tr. 213, 216).

At Plaintiff's April 7, 2006 appointment with Dr. Harris, Plaintiff again reported a pain level of 9. (Tr. 207). The doctor noted that pain was elicited by motion of the right hand, but that the elbow and shoulder showed no abnormalities. (Tr. 207). Dr. Harris' notes from June 2006 reveal a similar set of observations, with Plaintiff's pain self-reported as a 10 on a scale of 1-10. (Tr. 283). In November 2006, the doctor questioned whether Plaintiff might have carpal tunnel syndrome. (Tr. 280). She recommended that Plaintiff get cockup splints and follow up with a neurologist. (Tr. 280). At Plaintiff's December 2006 appointment, Dr. Harris noted that Plaintiff had not gotten splints for her wrist. (Tr. 425). Dr. Harris made an affirmative assessment of carpal tunnel syndrome. (Tr. 426).

At the request of the Office of Disability Determinations, Plaintiff was evaluated on December 19, 2006. The evaluator noted her diagnoses of rheumatoid arthritis, carpal tunnel syndrome, and hypertension. (Tr. 317). The Plaintiff reported poor grip and fine motor skills in her right hand. (Tr. 317). The evaluator observed no fine motor shakes or tremors. (Tr. 318). The evaluator recommended that Plaintiff obtain health insurance and continue appropriate medical care until she was medically stabilized, at which point in time she should resume employment. (Tr. 319).

On January 4, 2007, a Physical Residual Functional Capacity Assessment was completed by DDS physician Thomas Renney, D.O. He listed a primary diagnosis of morbid obesity, with a secondary diagnosis of hypertension and other alleged impairments to be osteoarthritis. (Tr. 335). He found the diagnosis of rheumatoid arthritis to be unestablished and alleged in error. (Tr. 336). He limited the Plaintiff to lifting and/or carrying 20 pounds occasionally, and 10 pounds frequently. (Tr. 336). Also in January of 2007, Plaintiff twice visited the emergency room for complaints of pain. On January 9, she complained of neck pain on the left side of her body (Tr. 371); on January 30, pain on the right side. (Tr. 343).

On February 14, 2007, the claimant was seen by Maria Villa, D.O., of the Family Health Center, for hospital follow-up regarding arm and neck pain. She reported her pain level was at a "9" on a scale of 0-10. (Tr. 421). Musculoskeletal system review revealed bilateral wrist abnormalities and positive Tinel's sign. Right shoulder abnormality included decreased range of motion due to pain. Cervical spine abnormality included some tenderness with palpation on the right side of the neck. Assessment included cervical radiculopathy and carpal tunnel syndrome with whole right-hand numb. Plan included sending her for a cervical spine MRI. It was noted that she "will likely need NCV/EMG and explained has to see neurology for this, self-pay." (Tr. 422). An x-ray performed that day revealed mild spondylosis. (Tr. 424).

On April 20, 2007, the claimant was seen by Family Health Center physician Melissa Zale, M.D., for hypertension follow-up. She reported her pain level was again at a "9" on a scale of 0-10. She had positive Spurling's sign, with numbness radiating down her right arm. She had positive Tinel's and Phalen's of the right-hand and positive tenderness at the base of the right thumb. The doctor's plan included medications, wearing a right wrist brace especially at night and medication for osteoarthritis of the right thumb and neck/arm pain. (Tr. 419). A May 2007 visit with Dr. Zale returned the same results. (Tr. 411-12).

Plaintiff returned to the emergency room on June 18, 2007. (Tr. 367). Physical examination revealed hypersensitivity to touch in her hands. (Tr. 369). She was diagnosed with neuropathy of

4

the upper extremities. (Tr. 368).

Plaintiff saw Dr. Zale again in June and July 2007. Dr. Zale assessed her with peripheral neuropathy, cervical radiculopathy, and carpal tunnel syndrome (Tr. 400, 408-09). When Plaintiff went to the emergency room on October 9, 2007, she was given a velcro splint. (Tr. 366). Dr. Zale gave Plaintiff a wrist brace when she saw her on October 18, 2007. At that visit, Plaintiff again stated she had constant pain in her neck, shoulder and right arm. (Tr. 395). She reported her pain level was at a "9" on a scale of 0-10. Review of musculoskeletal system revealed overall findings of limited range of motion in the right shoulder with positive Hawking's test in the right arm/wrist, which was in a brace. Wrists and shoulder pain abnormalities were indicated on the right. Assessment included shoulder tendinitis, carpal tunnel syndrome, peripheral neuropathy, cervical radiculopathy, with the whole right-hand numb. (Tr. 396–97).

*Administrative Law Judge's Decision*

The ALJ issued his Decision, denying benefits, on April 23, 2009. In much of his Decision the ALJ discusses, with specific citations to the medical evidence of record, the existence of Plaintiff's hand, wrist, and shoulder impairments.

After examining the record and considering the testimony offered at the hearing, the ALJ concludes that the Plaintiff is not disabled. The ALJ's specific findings were as follows:

1. The claimant has not engaged in substantial gainful activity since April 7, 2006, the application date (20 CFR 416.971 *et seq*).[2]

2. The claimant has the following severe impairments: obesity; essential hypertension (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

---

[2] The Court notes that this is an appeal of denial of Supplemental Security Income (SSI) for which the relevant date is the date of the filing of the application, rather than an appeal of denial of Social Security Disability Income (SSDI), for which the relevant date is the alleged onset date.

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).

5.      The claimant is capable of performing past relevant work as a housekeeper, characterized by The Dictionary of Occupational Titles, as light, unskilled. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.      The claimant has not been under a disability, as defined in the Social Security Act, since April 7, 2006, the date the application was filed (20 CFR 416.920(f)).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[3] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would

---

[3] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
   Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
   Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
   Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
   Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
   Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed several errors for which this case should be remanded. Specifically, Plaintiff alleges that the ALJ erred by failing to consider Plaintiff's carpal tunnel syndrome/hand numbness and right shoulder pain in his assessment of Plaintiff's residual

7

function capacity and by failing to elicit testimony from a vocational expert in light of the Plaintiff's nonexertional impairments and by failing to reconcile the discrepancy between her past relevant work finding and the Dictionary of Occupational Titles.

> *1. Whether the Administrative Law Judge's Decision Not to Include Plaintiff's Carpal Tunnel Syndrome and Right Shoulder Pain as Additional Severe Impairments was Reversible Error*

Plaintiff contends that the ALJ committed reversible error by failing to include carpal tunnel syndrome and right shoulder pain on the list of Plaintiff's severe impairments. The ALJ found that Plaintiff's essential hypertension and obesity were severe impairments at Step 2 of the sequential evaluation process and then proceeded to subsequent steps of the sequential evaluation without finding that Plaintiff had additional severe impairments. (Tr. 11, Finding #2; Tr. 12-15).

At the second step in the evaluation process, the ALJ is to consider the medical severity of the [Plaintiff's] impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills. Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)). At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005). An impairment or combination of impairments is not severe if it does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities, including: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting. Id. (citing 20 C.F.R. § 404.1521(a),(b)).

The medical evidence supports Plaintiff's claim that she suffers from carpal tunnel syndrome with hand pain and numbness, as well as right shoulder pain, and neck pain with peripheral neuropathy. See, e.g., (Tr. 206) (x-rays revealed right shoulder degenerative changes); (Tr. 365,

8

412, 418, 422, 426) (positive Tinel's sign); (Tr. 365, 418) (positive Phalen's maneuver); (Tr. 365) (limited range of motion to flexion and extension of the right wrist); (Tr. 396-97, 422) (decreased range of motion in shoulder); (Tr. 396-97) (positive Hawkin's test); (Tr. 415-16, 424) (x-rays revealed mild spondylosis of the cervical spine); (Tr. 418) (positive Spurling's sign). Plaintiff contends that these impairments are more than "slight abnormalities" which affect Plaintiff's ability to perform basic work activities, much less her past relevant work as a housekeeper.

The ALJ did not find that Plaintiff's impairments of carpal tunnel syndrome and right shoulder pain were severe. "Even assuming the ALJ erred when he concluded [Claimant's additional complaints] were not severe impairments, that error was harmless because the ALJ considered all of the impairments in combination at later steps in the evaluation process." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011). See also Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to social security cases).

Although the ALJ did not consider Plaintiff's claims of carpal tunnel syndrome and shoulder pain in his written decision at Step 2, he did do so at subsequent steps. The ALJ found Plaintiff's hypertension and obesity were severe impairments at Step 2 of the sequential evaluation process. (Tr. 11, Finding #2). He notes that the claimant "drives on a limited basis due to hand numbness." (Tr. 11). He cites to the claimant's testimony at the hearing, where she "alleged problems with her hands and vision, along with headaches and dizziness." (Tr. 12). He notes that she "alleged carpal tunnel syndrome to the extent that she can barely hold anything in her right hand. She alleged numbness and tingling." (Tr. 12). He notes that she "also alleged arthritis of the right shoulder, causing pain and functional limitation such as lifting a maximum of a gallon of milk." (Tr. 12).

In finding the plaintiff's impairments not severe, the ALJ cites to evidence of record, including Dr. Harris' November 2005 notes, documenting claimant's complaints of "chronic right shoulder pain for three years. . . ." He discusses Dr. Harris' notes, which stated that claimant was in no acute distress, but her right shoulder was tender. . . ." He acknowledges Dr. Harris's diagnosis of, among other impairments, "chronic shoulder pain." He further cites objective evidence to

9

support Plaintiff's complaints by stating "[i]ndeed, right shoulder x-ray dated December 2005 shows degenerative changes but no acute osseous abnormalities." (Tr. 13; 206).

The ALJ cites to the treatment notes in 2006, which document Plaintiff's complaints of hand pain, and makes note that splints were "recommended." (Tr. 13-14). The ALJ acknowledges the notes that indicate "Tinel's sign was positive." (Tr. 14). The ALJ cites other treatment notes from 2007, which discuss that the claimant "continued to complain of right wrist pain/numbness," that hand examination showed positive Tinel's sign, and Phalen's maneuver showed hand numbness/tingling, while the right wrist showed numbness/tingling in the median nerve distribution, with a diagnosis of carpal tunnel syndrome on the right. (Tr. 14). The ALJ cites to the treatment notes of October 2007, which show limited range of motion of the right shoulder, with positive Hawkins of the right arm and wrist. He acknowledges that "[S]he continued to have problems with her right hand prompting a visit to the ER," and that October 2007 notes show a diagnosis of "carpal tunnel syndrome on the right, with limited range of motion to flexion and extension secondary to pain… positive Tinel's and Phalen's sign suggestive of carpal tunnel syndrome." (Tr. 14).

The ALJ also evaluated Plaintiff's combined impairments at Step 3 of the sequential evaluation when he concluded that Plaintiff's combination of impairments did not meet or medically equal a listing. (Tr. 12, Finding #3). The ALJ also thoroughly examined Plaintiff's carpal tunnel syndrome and right shoulder pain in his pain and credibility evaluation. (Tr. 12-15). The ALJ then accommodated Plaintiff's credible limitations from these two impairments by limiting Plaintiff to light work only. (Tr. 12-15). The ALJ also considered Plaintiff's limitation to light work to determine whether Plaintiff could perform her past relevant work. Thus, since the ALJ did find severe impairments at Step 2 and considered his inquiry into the sequential evaluation with further consideration of the non-severe issues (namely the carpal tunnel syndrome and the right shoulder pain), any error that might exist here is harmless, and thus is not grounds for reversal.

2.<u>*Whether the Administrative Law Judge's Residual Functional Capacity Assessment is Supported by Substantial Evidence*</u>

The Plaintiff alleges that the ALJ's decision is not supported by substantial evidence and that

the ALJ erred in his credibility determination. The Commissioner maintains the opposite; the ALJ's RFC assessment is supported by substantial evidence and his credibility findings are correct.

## A. Substantial Evidence

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and, based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ, and along with the claimant's age, education, and work experience, the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567).

In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment standing along may not significantly limit an individual's ability to do basic work activities, it may (when considered with limitations or restrictions due to other impairments) be critical to the outcome of a claim. Social Security Ruling 96-8p. The regulations require the ALJ to consider the combined effect of a Plaintiff's impairments, even when those impairments are considered to be nonsevere when considered separately. 20 C.F.R. § 404.1523, 416.923.

Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. Jones v Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). An ALJ properly considers the Plaintiff's impairments in combination if he states that

11

the Plaintiff does not have an impairment, or combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity. Gibbs, 156 Fed. Appx. at 246 (citing Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).

Plaintiff contends that the ALJ's decision merely identifies the evidence of record as it relates to the Plaintiff's ongoing carpal tunnel syndrome/hand numbness and right shoulder pain and offers no meaningful discussion of the evidence as required under SSR 96-8p. The Commissioner contends that Plaintiff failed to provide evidence to support her allegations of disabling symptoms and that substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

Contrary to the Plaintiff's position, the ALJ did consider all of Plaintiff's medical records in arriving at his decision. The ALJ reviewed and discussed the records for the relevant period – from her alleged onset date of March 1, 2004, until her application date of April 7, 2006. (Tr. 12-13). The ALJ considered all of the Plaintiff's medical records from Family Health Centers (Plaintiff's primary physician group) between March 1, 2004, and January 6, 2009. (Tr. 13, 14, 207-70, 279-316, 375-428, 436-46). He observed that in 2006, Tinel's signs in her right hand were positive, and in 2007, a hand examination showed positive Tinel's sign and Phalen's maneuver showed hand numbness/tingling, while the right wrist showed numbness/tingling in the median nerve distribution, with a diagnosis of carpal tunnel syndrome on the right. He discussed additional evidence from Plaintiff's medical records showing that treatment in October 2007 showed limited range of motion in the right shoulder, with positive Hawkings of the right arm and wrist. (Tr. 14). He acknowledged that problems with her right hand prompted a visit to the ER. (Tr. 14). The ALJ also evaluated all the other medical evidence (Tr. 14-15), and specifically pointed out an x-ray from LMR Imaging Riverwalk from 2005 indicating that her right shoulder showed degenerative changes, (Tr. 13, 206), and ER notes from October 2007 showing a diagnosis of carpal tunnel syndrome on the right, with limited range of motion to flexion and extension secondary pain. (Tr. 14, 363-74). However, doctors' notes show no obvious erythema, echcymosis or swelling, despite a positive

12

Tinel's and Phalen's sign suggestive of carpal tunnel syndrome. Plaintiff also had full range of motion of the right elbow and shoulder. The State agency reviewing consultants concluded that the Plaintiff was capable of up to light work on a sustained basis. As set forth herein, the medical evidence does not support the Plaintiff's allegations, but instead shows that findings upon examination and diagnostic testing have been mild and that Plaintiff is capable of performing the residual functional capacity set forth by the ALJ.

Where the ALJ's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The court may not reweigh the evidence or substitute its own judgment. Id. After reviewing the ALJ's opinion and the medical evidence, the Court recommends that the ALJ's opinion is substantiated by substantial evidence, and thus should be affirmed.

## B. Credibility Finding

Under the regulations, the initial inquiry into a claimant's subjective complaints of pain involves whether the medical condition can cause the kind of pain alleged 20 C.F.R. § 416.929(b). This inquiry is akin to the Eleventh Circuit's pain standard. Under the Eleventh Circuit's pain standard, when an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561–62; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352

(11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)).

However, the inquiry does not end with the application of the Eleventh Circuit's pain standard. Foote, 67 F. 3d at 1560-61. The Regulations set forth a second inquiry which evaluates the severity, intensity, and persistence of the pain symptoms a claimant actually possesses. 20 C.F.R. § 416.929(b). In determining whether a claimant's complaints are credible, an ALJ considers objective medical evidence and information from the claimant and treating physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of the complaints, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the claimant's complaints. 20 C.F.R. § 416.929(2) & (3). This evaluation is essentially an evaluation of the claimant's credibility. Dyer, 395 F.3d at 1210.

In this instance, the ALJ concluded that though Plaintiff complained of pain, the evidence demonstrated that on numerous occasions, she was in no acute distress (Tr. 14, 209, 211, 213, 216, 227, 230, 232, 235, 279, 283, 285, 318, 369, 378, 388, 396, 400, 408, 412). He properly considered the type, extent, and frequency of Plaintiff's complaints and treatment as well as her noncompliance with recommended treatment in evaluating her symptoms in determining her RFC. Specifically, he found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the RFC assessment. (Tr. 13).

The ALJ reasoned that Plaintiff was not as limited as she alleged. In reaching this conclusion, he considered the fact that Plaintiff was non-compliant with pain medications, and, indeed, went several months without medications. (Tr. 13). The ALJ noted that Plaintiff's hand

pain prompted a visit to the emergency room in October 2007, (Tr. 14, 395), where she was given prescriptions and a wrist splint. (Tr. 366, 395). He considered the fact that Plaintiff complained of pain, hand numbness, and tingling but that she failed to comply with recommended treatment to get wrist splints for her carpal tunnel syndrome. (Tr. 13, 149, 280, 411, 425). The ALJ noted that, afterwards Plaintiff did not visit her doctor from late October 2007 through February 2008, did not fill the prescribed medications for her hand symptoms during that time, and did not attend some of her scheduled follow-up appointments after February 2008. (Tr. 14, 259, 373, 377, 383-84, 387, 393, 395, 397, 438, 439, 440). Her doctor advised Plaintiff to try and get her medications from the patient assistance program. (Tr. 397). The ALJ examined the medical evidence and observed that despite allegations of neck pain, a cervical x-ray showed no more than mild spondylosis. (Tr. 14). Treatment notes from throughout 2007 show echocardiogram and persatine stress tests were negative, mild atherosclerotic changes with no evidence of carotid stenosis, and no acute distress. (Tr. 14). The ALJ also based his decision on the evidence which demonstrates the normal ranges of motions and appearance in Plaintiff's right elbow and shoulder. (Tr. 14, 207, 210, 219, 230, 239, 241, 286, 365, 415-16, 426).

The ALJ specifically noted a pattern of cancellation of appointments or no-shows, in addition to non-compliance with medications. He observed that while the Plaintiff has complained of right hand numbness and tingling, examinations have routinely shown normal functioning. (Tr. 15). He pointed out that diagnostic testing has shown no active acute abnormalities of the right shoulder, no acute pathology during chest x-ray, a normal nuclear study, with normal ejection fraction, and cervical MRI showing no evidence of spinal stenosis or compression. A brain MRI showed mild nonspecific periventricular white matter, but no other abnormalities. Doctors' notes show that Plaintiff's blood pressure was uncontrolled in 2008, but this was apparently associated with non-compliance of medications. (Tr. 15, 206-70, 279-316, 363-428, 436-46).

The ALJ tied his consideration of Plaintiff's carpal tunnel syndrome and right shoulder pain into his analysis of the Plaintiff's credibility in reaching his RFC finding. As a result, the Court

respectfully recommends that substantial evidence supports the ALJ's credibility finding and thus his assessment of the Plaintiff's RFC.

3. *Whether the Administrative Law Judge Properly Found that Plaintiff Retained the Residual Functional Capacity to Perform Her Past Relevant Work as a Housekeeper*

Plaintiff contends that the ALJ erred by failing to elicit testimony from a vocational expert in light of her nonexertional impairments and by failing to reconcile the discrepancy between his past relevant work finding and the Dictionary of Occupational Titles. Plaintiff claims that her pain and functional limitations secondary to her ongoing carpal tunnel syndrome/hand numbness and right shoulder are nonexertional impairments which require the testimony of a vocational expert.

The general rule is that an ALJ must consult with a vocational expert in one of two situations: where the Claimant is unable to perform a full range of work at a given residual functional level or when a Claimant has non-exertional impairments. Phillips v. Barnhart, 357 F.3d 1242 (11th Cir. 2004). The burden is on the claimant to show that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy. In addition, the claimant bears the burden of showing that her past work experience is not past relevant work. Waldrop v. Comm'r of Soc. Sec., 379 F. App'x 948, 953 (11th Cir. 2010). Additionally, the regulations require that the Plaintiff not be able to perform her past kind of work, not merely that she be unable to perform the specific job she held in the past. See Jackson v. Bowen, 801 F.2d 1292, 1294 (11th Cir. 1986). Since the Plaintiff has not presented any vocational evidence which demonstrates that her RFC prevented her from performing her past kind of work as that work is performed in the national economy and as she actually performed it, she has failed to meet her burden.

Here, substantial evidence supports the ALJ's conclusion that Plaintiff could perform a full range of light work and had no additional limitations. He thus found at Step 4 of the sequential evaluation that Plaintiff can perform her past relevant work as a housekeeper. (Tr. 12, Finding #4). Thus the ALJ was not required to obtain Vocational Expert testimony in this case because the issue involved whether Plaintiff could perform her past relevant work. See Lucas v. Sullivan, 918 F.2d

1567, 1573 (11th Cir. 1990) ("because the ALJ concluded that [the claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary."); Schnoor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) ("The testimony of a vocational expert is only required to determine whether the claimant's residual functional capacity permits him to do other work after the claimant has met his initial burden of showing that he cannot do past work."). The ALJ thus properly relied on the DOT standards. See Ehrisman v. Astrue, 2010 WL 1780248, at *3 (11th Cir. May 5, 2010) (noting an ALJ properly consulted the DOT regarding the requirements of the claimant's past work).

Plaintiff also contends that none of the housekeeper positions characterized by the Dictionary of Occupational Titles is defined as light and unskilled. However, the ALJ's finding that Plaintiff has the RFC to perform a full range of light work supports his conclusion that Plaintiff could perform a housekeeper job "as actually performed." (Tr. 15). Plaintiff does not contest the finding that she is capable of performing the work, but merely the fact that the ALJ rather than a VE arrived at this conclusion. The ALJ noted Plaintiff's description of her past job and job duties in his decision. (Tr. 13).

In any event, substantial evidence supports the ALJ's finding that Plaintiff could perform her housekeeper job as actually performed. In Plaintiff's Work History Report, she indicated that her job title was that of a housekeeper and "clean room-housekeeping." (Tr. 145, 146). She indicated that she performed this type of work in a motel from 1987 to 1999. (Tr. 131, 145). This fact was confirmed by Plaintiff's daughter at the hearing. (Tr. 100). Plaintiff explained that she cleaned rooms by pushing a cart to and from rooms, making the beds, mopping, vacuuming, dusting, cleaning the bathroom, and carrying laundry to and from a cart. (Tr. 131, 146). In performing these duties, Plaintiff indicated she lifted less than ten pounds, walked eight hours, stood seven to eight hours, stooped seven hours, crouched eight hours, kneeled, crawled, reached, handled, and grasped as well as used equipment. (Tr. 131, 146). She did not supervise, hire, or fire anyone. (Tr. 131, 146).

17

At the hearing, Plaintiff indicated that she had last worked as a housekeeper for six months in 2002 at The Lakes in Fort Myers, a retirement center. (Tr. 93). According to Plaintiff, she made beds, vacuumed, and cleaned the bathrooms as a housekeeper. (Tr. 93-94). She also testified that she had to stand, move furniture out of the vacuum's way, as well as bend, squat, and kneel; however, she said at The Lakes, she did not have to do any lifting. (Tr. 96-97). The ALJ noted Plaintiff's description of her past job and her job duties in his decision. (Tr. 13).

The job description of a housekeeper in the DOT matches Plaintiff's own description and testimony about the requirements of her past relevant work and the motel industry in which she worked. (Tr. 93, 96-97, 145-46). Additionally, the DOT description indicates that the job of cleaner/housekeeper in a hotel is light work and has a specific vocational preparation of 2, which corresponds to unskilled work. See SSR 00-4p; 20 CFR § 416.968(a). Because the ALJ correctly found that Plaintiff could still perform her past relevant work as the job described in the DOT, his decision is supported by substantial evidence.

Accordingly, it is now **RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 12th day of December, 2011.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record